# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **TERRY B. BOYD,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20CV00023 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **K-VA-T FOOD STORES, INC.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Hilary K. Johnson,* Hilary K. Johnson, P.C., *Abingdon, Virginia, for Plaintiff; Ramesh Murthy,* Penn Stuart & Eskridge, *Abingdon, Virginia, for Defendant.*

The plaintiff, Terry Boyd, a former manager at K-VA-T Food Stores, Inc. has sued his previous employer for age discrimination under the Age Discrimination in Employment Act as well as retaliation under Title VII. Following discovery, the defendant has moved for summary judgment. I find that Boyd has failed to point to evidence that can prove the essential elements of his claims, namely that his termination was a pretext for age discrimination or that engaging in activity protected under Title VII was the but-for cause of his termination. I will accordingly grant the defendant's motion and enter judgment for it.

I.

The following facts taken from the summary judgment record are either undisputed, or where disputed are presented in a light most favorable to the nonmoving party.

A.

K-VA-T Food Stores, Inc. ("KVAT") maintains a grocery distribution center that receives shipments of merchandise to be transported to the numerous Food City grocery stores. The distribution center fulfills an individual store's order for merchandise by picking goods from the warehouse, placing them on pallets, and loading them on trucks that deliver the goods to the requesting store.

The Perishables Warehouse is one of six departments in the distribution center. Each department has a warehouse manager who is responsible for maintaining the unit's production and fulfillment output and managing the staff. Each manager reports to Jack Honaker, the Director of the Distribution Center.

Plaintiff Boyd was employed at KVAT from July 1992 until he was terminated on May 24, 2019. KVAT originally hired Boyd as a part-time order selector in the Perishables Warehouse. He eventually worked his way up to Perishables Warehouse manager in 2006 and served in that position for more than twelve years until KVAT terminated him.

Boyd had four primary responsibilities as manager of Perishables: production, labor, budget, and workplace culture. To maintain production, Boyd had to make sure that shipments and orders for fruits and vegetables were processed efficiently and timely. His responsibilities for labor included managing a staff of seventy employees, hiring and firing them, and managing workplace accidents, turnover, and overtime. He was given a budget, and charged with completing production as efficiently as possible. This meant, for example, staffing the hourly crews to ensure that they did not finish their work early and remain on the clock. Ultimately Boyd was "responsible for the work culture" in his department. Pl.'s Resp. Br. to Def.'s Mot. Summ. J. Ex. A, Written Reprimand 1, ECF No. 15-1. This meant he was tasked with ensuring a "safe and comfortable workplace," Def.'s Mem. Supp. Mot. Summ. J. Ex. A, Honaker Aff. ¶ 8, ECF No. 14-1, taking "proactive measures . . . to prevent personnel concerns from arising," and taking appropriate action to resolve any issues which arose, Written Reprimand 1, ECF No. 15-1.

From 2006 to 2017 while working as the manager of the Perishables Warehouse, Boyd never received any negative feedback or reviews on his record. Prior to the incidents giving rise to this claim, Boyd had never received so much as a "needs improvement" on his evaluations. That changed in 2018.

In Spring 2018, Boyd related to human resources the allegation of a KVAT sanitation employee, Hazel Sawyers, who said that she had been sexually assaulted

by KVAT's sanitation foreman, Ronald Thomas. Boyd was walking through the warehouse on his way to human resources when he saw Sawyers crying. She told Boyd that Thomas had threatened to fire her if she did not submit to his sexual demands. When Boyd arrived, he told a human resources employee about Sawyers' allegations against Thomas and stated, "You all probably need to take a look at that." Boyd Dep. 69, ECF No. 23.

Thomas' sister is Opal Kestner, Honaker's secretary of more than forty years. Boyd claims that reporting Kestner's brother triggered her to use her "position of power" in the company to frustrate the investigation of Thomas, and to influence Honaker, with whom she was rumored to be having an affair, so that Honaker would retaliate against Boyd. *Id*. at 108. KVAT disputes this.

Specifically, Boyd claims that Kestner tried to intervene in the investigation in two ways. First, Boyd stated that Kestner entered a room where her brother was being interviewed about the harassment allegation, claiming that she "wanted to be a part" of the investigation "but she was told to leave." *Id*. Next, Honaker admits in his affidavit that Kestner "asked [him] about the Thomas incident," but that he "responded that he would not discuss Thomas or any other KVAT Food associate" and "never again spoke of the Thomas/Sawyers sexual harassment incident." Honaker Aff. ¶ 12-13, ECF No. 14-1.

Boyd contends that forwarding Sawyer's claim about Kestner's brother also triggered a change in the way that Kestner and Honaker subsequently dealt with him. Specifically, he claims that his boss Honaker gave him the "silent treatment," by ceasing personal conversation and limiting their interactions to strictly business-related matters. Boyd Dep. Tr. 117, ECF No. 23. Honaker's "coming to [Boyd's] office and like making personal visits pretty much stopped," and there was a "noticeable difference in [Honaker's] behavior pattern towards [Boyd]." *Id*. at 119. Kestner also gave Boyd the silent treatment, and even refused to speak with him about business matters. The gravamen of Boyd's retaliation claim is that Honaker disciplined him and ultimately terminated him a year later for reporting Kestner's brother.

B.

After Boyd relayed the report of Thomas in Spring 2018, he transmitted another employee's report of sexual harassment in August 2018, which ironically resulted in Boyd being disciplined. A KVAT sanitation worker named Tina Mohl claimed that Dean Trent, an employee in Boyd's department, had touched her breast while hugging her. Boyd asked Mohl to write her allegations on paper, which she did. After Boyd received Mohl's written statement, Boyd informed Trent of the accusations against him. Then, Boyd waited roughly three hours to actually provide Mohl's statement to human resources, because he had other work to complete that

day.  Upon turning in Mohl's statement to Sandra Taylor, KVAT's human resources employee, Taylor indicated the three-hour delay was "no big deal," and that she was "glad" that Boyd had talked to Trent.  *Id*. at 150, 151.

After reporting this second claim of sexual harassment, Honaker and KVAT's Assistant Director of Distribution, Shane Estep, met with Boyd and disciplined him for those very reasons — the three-hour reporting delay and talking to Trent. Honaker and Estep issued Boyd a written reprimand which stated that he failed to follow the sexual harassment policy outlined in the Food City Distribution Center Associate Handbook and indicated that Boyd was not maintaining appropriate "work culture."  Written Reprimand 1, ECF No. 15-1.[1]  Specifically, they cited Boyd for not pausing the discussion with Mohl to contact human resources, not informing the Sanitation Manager, Billy Rhoton or Honaker of the allegation, waiting roughly three hours to report the incident to human resources, and taking steps to "investigat[e]" or "resolv[e]" the incident himself by collecting Mohl's written statement and speaking with the accused.  *Id*.  In the meeting, Boyd claims that Honaker and Estep "probably" explained the "poor culture" reference to mean that

---

[1] The parties did not provide the court with KVAT's written sexual harassment policy.  However, Honaker has represented that "an individual with a sexual harassment complaint is to report the issue to an individual in a supervisory capacity at KVAT Food. The supervisor is to obtain [a] written statement.  The supervisor then reports the written statement to Human Resources."  Honaker Aff. ¶ 9, ECF No. 14-1.

"it was [Boyd's] responsibility that something like that happened," because he hired Dean Trent, the alleged perpetrator. Boyd Dep. Tr. 78, ECF No. 23. Indeed, Honaker claims he told Shane Estep about six months later that Boyd "needed to be more selective" in hiring. Honaker Aff. ¶ 17, ECF No. 14-1.

C.

The next incident involving Boyd resulted in his termination. Boyd took leave on Friday May 10, 2019, and then returned to work on Monday May 13, 2019. Michael Thomas, the Perishables Warehouse night shift supervisor, covered the Saturday night shift in Boyd's absence. During that shift, KVAT learned that several employees in the department completed their shifts by 11:39 pm., but stayed on the clock until 2:30 a.m. the next morning, played a game of volleyball in the aisles of the warehouse, and took breaks in their vehicles or outside the warehouse while on the clock. In total, KVAT estimated that employees were on the clock for sixty-four hours that they did not actually work.

Honaker launched an investigation to find those responsible, in which Boyd assisted by gathering the names of the employees who played volleyball. Honaker concluded from his investigation that the events of May 12, 2019 were a culmination of Boyd's mismanagement. Honaker claimed to have discovered that Boyd overhired for Perishables which caused workers to frequently finish work early and stay on the clock until the end of their shift. Honaker learned that Boyd

compromised the security of the building in December 2018 when a child was found running through the Perishable Warehouse and again in April 2019 when a warehouse door was left open for eight hours. Finally, Honaker found out that Boyd frequently permitted employees to take breaks to go outside and smoke, use their cell phones, or warm up after working in the freezer. Apart from the company's policy to permit two breaks and a lunch break, Boyd admitted that he would grant employees permission to go to their cars to retrieve cell phones or medication while they were on the clock. After a series of meetings between Honaker and Boyd to gather information about the events of May 12, 2019, Honaker, Estep, and a KVAT human resources employee met with Boyd to terminate him on May 24, 2019.

According to Boyd's written termination notice and Honaker's affidavit, KVAT's stated reasons for terminating Boyd were: (1) approving extra breaks while on the clock, (2) poor labor management that often resulted in employees finishing their work early and staying clocked in, (3) failure to address security concerns related to the child and the door, (4) the volleyball game on May 12, 2019, and (5) incidents from April 2019 revealed during Honaker's investigation where Boyd allowed employees to take extra breaks while on the clock. Honaker Aff. ¶¶ 22–23;

Pl.'s Resp. Br. to Def.'s Mot. Summ. J. Ex. B, Termination Letter 1, ECF No. 15-2.[2]

KVAT replaced Boyd who was then 52 years old, with Jason Parks, a 41-year-old, to manage Perishables. Honaker claims that he did not consider Boyd or Parks' ages when making the decision to fire or replace Boyd. Boyd also testified during his deposition that no one at KVAT made comments to him that he was too old, or that he would be fired because of his age. When Boyd was terminated, managers of the other departments were between 49 and 64 years old, and none have been terminated after he left KVAT.

## II.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] Once the moving party demonstrates the absence of a genuine issue of material fact, "it is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of

---

[2] KVAT is silent on whether the termination letter's reference to firing Boyd in part for fostering poor "work culture," meant that it was terminating Boyd, in part, for his failure to take the proper steps to report sexual harassment, as KVAT used that term in the August 2018 written reprimand. Compare Written Reprimand 1, ECF No. 15-1 with Termination Letter 1, ECF No. 15-2; *see* Honaker Affidavit ¶ 22.

[3] I have omitted internal quotation marks, citations, and alterations throughout this opinion unless otherwise noted.

material fact." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014). A genuine dispute of material fact will preclude summary judgment. *Tolan v. Cotton,* 572 U.S. 650, 656 (2014). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* I am "required to view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Id.* at 312. In doing so, I must not "weigh the evidence or make credibility determinations." *Mercantile Peninsula Bank v. French* (*In re French),* 499 F.3d 345, 352 (4th Cir. 2007).

III.

The familiar *McDonnell-Douglass* burden-shifting framework may be used to prove claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 624 *et seq.*, and a claim of retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a) ("Title VII") where, as here, there is no direct evidence of discrimination or retaliation. *EEOC v. Warfield-Rohr Casket Co.*, 364 F.3d 160, 163 (4th Cir. 2004); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). "To prevail under the *McDonnell Douglas* framework, [the plaintiff] must first establish a prima facie case." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). "Once the prima facie case is established, the burden shifts to the

employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *King v. Rumsfeld*, 328 F.3d 145, 150 (4th Cir. 2003). "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons but were a pretext for discrimination." *Foster*, 787 F.3d at 250.

KVAT has moved for summary judgment on both claims, arguing that there is no genuine dispute of material fact, and the evidence is insufficient to show that Boyd's termination was a pretext for discrimination, or caused by Honaker's retaliation.[4]

A.

The ADEA makes it unlawful to "refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "[T]o establish a prima facie case of unlawful age discrimination" under the ADEA, a plaintiff "must show that (1) he is a member of the protected class," meaning over forty years old; "(2) he was qualified for the job and met [his employer's] legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following

---

[4] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not significantly aid the decisional process.

his discharge, he was replaced by a substantially younger individual with comparable qualifications." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006). "The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age.*" *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).

Here, KVAT replaced Boyd who was then 52, with Jason Parks, a 41-year-old, after allegedly terminating Boyd for a number of reasons unrelated to his age. Even assuming that Boyd can establish a prima facie case, KVAT has proffered a legitimate reason for termination and the burden shifts back to Boyd to provide evidence of pretext. *Foster*, 787 F.3d at 250. KVAT has pointed to the complete dearth of evidence to support that inference. Boyd admitted that no one at KVAT ever made comments about his age, or that he was too old for the job. Indeed, ascribing this reason for his termination is wholly unsupported by the evidence. Since Boyd has failed to point to evidence that he was fired because of his age, he cannot succeed on his ADEA claim as a matter of law.

B.

Next, KVAT challenges Boyd's retaliation claim at an earlier step of the burden-shifting framework by arguing that a lack of record evidence precludes him from establishing a prima facie claim. *Id*.

Title VII prohibits an employer from "discriminat[ing] against any of his employees" because he has opposed "an unlawful employment practice," like sexual harassment in the workplace. 42 U.S.C. § 2000e-3(a); *see Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018) (sexual harassment is an unlawful employment practice under Title VII). To make out a prima facie case of retaliation, the plaintiff must show "(1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *King*, 328 F.3d at 150–51. Here, KVAT argues that there is insufficient evidence to prove the protected activity and causation elements.

Even assuming Boyd's transmission of Sawyers' allegation is protected activity under Title VII,[5] KVAT argues that Boyd cannot establish the causation element of his prima facie claim because the one year period between the alleged

---

[5] Section 704(a) of Title VII proscribes retaliation only against "protected activities," namely "opposing" unlawful employment practices, or "participating in any manner in a Title VII investigation, proceeding, or hearing." *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999); 42 U.S.C. § 2000e-3(a).

Neither the Supreme Court nor the Fourth Circuit has decided whether merely reporting sexual harassment of another employee as required by one's job duty is protected opposition activity under Title VII. *But see Littlejohn v. City of New York*, 795 F.3d 297, 318 (2d Cir. 2015) (holding such activity is unprotected, reasoning that "merely to convey others' complaints of discrimination is not to oppose practices made unlawful by Title VII").

protected activity and termination is too attenuated to establish causation, and there is a lack of evidence demonstrating Honaker's retaliatory animus toward Boyd.

A plaintiff must show "that retaliation was a but-for cause of a challenged adverse employment action." *Foster*, 787 F.3d at 252. Causation may be proved through two routes: (1) "the existence of facts that suggest that the adverse action occurred because of the protected activity," and/or (2) "sufficient temporal proximity" between the protected activity and the adverse action. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021). Where a plaintiff relies solely on "mere temporal proximity to establish a causal connection between her complaint and her termination" then "the temporal proximity must be very close." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). However, "where temporal proximity between protected activity and allegedly retaliatory conduct is missing," a plaintiff may pursue the first route and point to "evidence of recurring retaliatory animus during the intervening period." *Id*. This alone "can be sufficient to satisfy the element of causation." *Id*. On a motion for summary judgment, "very little evidence of a causal connection is required to establish a *prima facie* case of retaliation." *Roberts*, 998 F.3d at 127.

Boyd cannot rely on a theory of temporal proximity alone because his termination occurred roughly one year after his alleged protected activity. The Fourth Circuit has stated generally that "a lapse of three to four months between the

employer's knowledge of protected activity and the alleged retaliation is too long to establish a causal connection by temporary proximity alone." *Roberts*, 998 F.3d at 127.

Boyd attempts to create a genuine dispute about causation through the other route, by pointing to instances of intervening retaliatory animus adduced during discovery. Boyd claims that Honaker began to demonstrate retaliatory animus immediately after he reported Thomas. For example, Kestner attempted to use her "position of power" to intercede in her brother's investigation and influence Honaker to act coldly toward Boyd. Boyd Dep. Tr. 108, ECF No. 23. Boyd also claims that *both* Honaker and Kestner giving him the silent treatment is evidence that Kestner successfully influenced Honaker. Indeed, Boyd testified that "*they* were mad at [him]" after he reported Thomas, meaning *both* Kestner and Honaker. *Id*. at 123.

Additionally, Boyd claims that the conduct which Honaker reprimanded him for in the August 14, 2018, write up did not actually violate KVAT's policies, but instead evidences Honaker's motive of retaliation. Although Honaker disciplined Boyd for waiting three hours to report Mohl's allegation and for speaking with Trent, no evidence indicates that KVAT's policy requires reporting within a specified timeframe or prohibits speaking with the accused. In fact, the human resources employee who received the report said the delay was "no big deal," and that she was "glad" Boyd had spoken with Trent. *Id*. at 150, 151. Moreover, KVAT has claimed

that Boyd was obligated to send the complaint to Mohl's supervisor, Billy Rhoton. But the onus to report upwards is on the "individual with a sexual harassment complaint," who in that case would have been Mohl, not Boyd. Honaker Aff. ¶ 9, ECF No. 14-1. And the policy does not require the allegation to be reported to the complainant's department head or Honaker as the reprimand claimed. Rather, the policy simply requires the claim to be given to an individual in "a supervisory capacity." *Id*. ¶ 9. Indeed, Boyd claims that David Johnson, Mohl's "supervisor or lead guy" had been alerted about Mohl's complaint first, and they discussed Mohl's complaint in Johnson's office. Boyd Dep. Tr. 70–71, ECF No. 23. In essence, Boyd invites the fact-finder to infer that Honaker terminated him for relaying Sawyers' allegations because Honaker acted coldly toward him immediately after it was filed, and improperly disciplined him a few months later.

But Boyd's theory is too attenuated to establish a genuine dispute about causation. Boyd has pointed to *less* occurrences of intervening animus over a *longer* period of time than what the Fourth Circuit found sufficient to survive summary judgment in *Lettieri*. 478 F.3d at 650. Unlike in *Lettieri* where the plaintiff's supervisor "regularly" tried to terminate her over a period of seven months after she filed a claim by "strip[ing] her of significant job responsibilities," repeatedly discussing firing her, and opining to management that her position was unneeded, *id*. at 649, 651, here Boyd has only pointed to a few instances of the silent treatment

and a single reprimand in one year's time. Moreover, retaliatory animus in this case is at least two steps removed because Honaker was not the subject of the sexual harassment complaint, and Boyd was not the accuser. Simply put, the evidence adduced would be insufficient as a matter of law to infer causation. *See id*. at 650.

In conclusion, KVAT has pointed to an absence of a genuine dispute of material fact as to the issues which must be decided under the *McDonnell Douglass* framework.[6] Boyd has not pointed to evidence sufficient to prove causation for a prima facie case of retaliation. Nor has he proved that his termination was a pretext for age discrimination. Therefore, he cannot prevail on either of his claims as a matter of law.

IV.

For the foregoing reasons, it is **ORDERED** that the Defendant's Motion for Summary Judgment, ECF No. 13, is GRANTED.

A separate judgment will be entered herewith.

ENTER: July 1, 2021

/s/ JAMES P. JONES
United States District Judge

---

[6] Although Boyd attempts to point to a genuine dispute about pretext for his retaliation claim, that issue is not triggered unless he can first establish a prima facie case. *Foster*, 787 F.3d at 250.